ORIGINAL
FILED
06 JUN 28 PM 12:47
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
E-filing
HRL

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
billl@lerachlaw.com
darrenr@lerachlaw.com
travisd@lerachlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, Derivatively on Behalf of KLA-TENCOR CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH LEVY, KENNETH L. SCHROEDER, RICHARD P. WALLACE, JOHN H. KISPERT, JEFFREY L. HALL, JON D. TOMPKINS, LIDA URBANEK, H. RAYMOND BINGHAM, ROBERT T. BOND, EDWARD W. BARNHOLT, STEPHEN P. KAUFMAN and DAVID C. WANG,<br><br>Defendants,<br><br>– and –<br><br>KLA-TENCOR CORPORATION, a Delaware corporation,<br><br>Nominal Defendant. | VIA FAX C 06 4002<br>No.<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, CONSTRUCTIVE FRAUD, CORPORATE WASTE, UNJUST ENRICHMENT, GROSS MISMANAGEMENT, ACTION FOR ACCOUNTING AND VIOLATION OF CALIFORNIA CORPORATIONS CODE<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought by a shareholder of KLA-Tencor Corporation ("KLA-Tencor" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior KLA-Tencor insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to KLA-Tencor insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1994.

2. Between July 1994 and the present, Defendants also caused KLA-Tencor to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by KLA-Tencor carried with them an exercise price that was ***not less than*** the fair market value of KLA-Tencor stock on the date of grant and issuance.

3. In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be ***backdated*** to dates when the Company's shares were trading at or near the lowest price for that relevant period. By May 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars. These grants were included in more than $246 million in stock sale proceeds for Defendants.

4. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused KLA-Tencor to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to

senior KLA-Tencor executives; and (iii) subjected KLA-Tencor to potential liability from regulators including the SEC, the IRS and federal prosecutors.

5. Defendants' gross mismanagement and malfeasance over the past decade has exposed KLA-Tencor and its senior executives to criminal and civil liability for issuing false and misleading financial statements. Specifically, Defendants caused or allowed KLA-Tencor to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public disclosures presented an inflated view of KLA-Tencor's earnings and earnings per share.

6. Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on KLA-Tencor. The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their misdeeds. Defendants' breach of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to the plans. The Company has now been mentioned as one of several companies likely to have manipulated options. Meanwhile, certain of the Defendants, who received under-priced stock options and/or knew material non-public information regarding KLA-Tencor's internal control problems, abused their fiduciary relationship with the Company by selling over $246 million worth of their personally held shares at artificially inflated prices during the relevant period. This action seeks recovery for KLA-Tencor against these faithless fiduciaries, as KLA-Tencor's Board of Directors, as currently composed, is simply unable or unwilling to do so.

## INTRADISTRICT ASSIGNMENT

7. A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of Santa Clara, and as such this action is properly assigned to the San Jose division of this Court.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, and under California and Delaware law for violations of breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9. This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §§1331 and 1337. This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11. Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. KLA-Tencor is located in and conducts its business in this District. Further, Defendants conduct business in this District, and are citizens of California and reside in this District.

## PARTIES

12. Plaintiff Alaska Electrical Pension Fund is, and at times relevant hereto was, a shareholder of nominal party KLA-Tencor.

13. Nominal party KLA-Tencor is a supplier of process control and yield management solutions for the semiconductor and related microelectronics industries. The Company's portfolio of products, software, analysis, services and expertise is designed to help integrated circuit manufacturers manage yield throughout the entire fabrication process, from research and development to final mass-production yield analysis. The Company was founded in July 1975 as KLA Instruments Corporation. In May 1997, KLA Instruments merged with Tencor Instruments – another longtime leader in semiconductor industry – and changed its name to KLA-Tencor.

14. Defendant Kenneth Levy ("Levy") has been Chairman of the Board of KLA-Tencor since July 1999. Levy is the founder of KLA Instruments and at all times has served as a director of the Company. Levy served as the Chief Executive Officer ("CEO) of KLA Instruments from its inception until its merger with Tencor Instruments in May 1997. From July 1998 to June 1999, Levy served as CEO of KLA-Tencor. At all relevant times, Levy actively participated in the management of KLA-Tencor's daily business affairs and finances. He also actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY[1] 1995-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his executive positions with the Company, Board membership and ownership of KLA-Tencor stock, Levy was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Levy violated Cal. Corp. Code §§25402 and 25502.5 by selling 2.28 million KLA-Tencor shares for insider trading proceeds of more than $111 million.

15. Defendant Kenneth L. Schroeder ("Schroeder") was CEO and a director of KLA-Tencor from July 1, 1999, until he retired from the Company effective January 1, 2006. Schroeder initially joined KLA Instruments in 1979 and left in 1987. Schroeder returned to KLA Instruments in 1991. From November 1991 to July 2002 Schroeder held the position of President of the Company. He again held the position of President from May 2004 to July 2005. At all relevant times, Schroeder actively participated in the management of KLA-Tencor's daily business affairs and finances. He also actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 1995-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his executive positions with the Company, Board membership and ownership of KLA-Tencor stock, Schroeder was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to

---

[1] KLA-Tencor's fiscal year ends June 30. Accordingly, the Company's FY 1995 started July 1, 1994 and ended June 30, 1995.

cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Schroeder violated Cal. Corp. Code §§25402 and 25502.5 by selling 1.25 million KLA-Tencor shares for insider trading proceeds of more than $64 million.

16. Defendant Richard P. Wallace ("Wallace") is the CEO and a director of KLA-Tencor. He was appointed to his current position effective January 1, 2006. Wallace joined KLA-Tencor in 1988 serving in a variety of senior management positions – most recently serving as President and Chief Operating Officer ("COO") from July 2005 to January 2006. Wallace also actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 1995-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his executive positions with KLA-Tencor, Board membership and ownership of KLA-Tencor stock, Wallace was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Wallace violated Cal. Corp. Code §§25402 and 25502.5 by selling 292,499 KLA-Tencor shares for insider trading proceeds of more than $15.5 million during the relevant period.

17. Defendant John H. Kispert ("Kispert") is the appointed President and COO of KLA-Tencor. He was appointed to his current position effective January 1, 2006. Previously, Kispert served as Chief Financial Officer ("CFO") of KLA-Tencor from July 2000 until his promotion to President and COO. Kispert joined KLA-Tencor in 1995 serving in a variety of senior management positions. Kispert actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 1995-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his executive positions at the Company and ownership of KLA-Tencor stock, Kispert was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Kispert violated Cal. Corp. Code §§25402 and

25502.5 by selling 341,500 KLA-Tencor shares for insider trading proceeds of more than $20.1 million during the relevant period.

18. Defendant Jeffrey L. Hall ("Hall") is the CFO of KLA-Tencor. He was appointed to his current position effective January 1, 2006. Hall joined the Company in 2000 acting as the Vice President of Finance, Mergers and Acquisitions. During the relevant period, Hall actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 2000-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his executive positions at the Company and ownership of KLA-Tencor stock, Hall was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Hall violated Cal. Corp. Code §§25402 and 25502.5 by selling 12,300 KLA-Tencor shares for insider trading proceeds of $607,060 during the relevant period.

19. Defendant Jon D. Tompkins ("Tompkins") has been a director of the Company since April 1997. Previously, Tompkins served as CEO from May 1997 until July 1998 and as Chairman of the Board from July 1998 to June 1999. Tompkins was President, CEO and Chairman of the Board of Tencor Instruments. During the relevant period, Tompkins actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 1997-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his Board membership and ownership of KLA-Tencor stock, Tompkins was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Tompkins violated Cal. Corp. Code §§25402 and 25502.5 by selling 670,049 KLA-Tencor shares for insider trading proceeds of $31.5 million during the relevant period.

20. Defendant Lida Urbanek ("Urbanek") has been a director of the Company since April 1997. From August 1991 until April 1997, Urbanek was a director of Tencor Instruments prior to its merger with KLA Instruments. During the relevant period, Urbanek actively participated in the

preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 1997-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of her Board membership and ownership of KLA-Tencor stock, Urbanek was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on her knowledge of material non-public information regarding the Company, defendant Urbanek violated Cal. Corp. Code §§25402 and 25502.5 by selling 9,149 KLA-Tencor shares for insider trading proceeds of $448,324 during the relevant period.

21. Defendant H. Raymond Bingham ("Bingham") has been a director of the Company since October 1999. During the relevant period, Bingham actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 2000-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his Board membership and ownership of KLA-Tencor stock, Bingham was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Bingham violated Cal. Corp. Code §§25402 and 25502.5 by selling 5,000 KLA-Tencor shares for insider trading proceeds of $263,100 during the relevant period.

22. Defendant Robert T. Bond ("Bond") has been a director of the Company since August 2000. During the relevant period, Bond actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 2000-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his Board membership and ownership of KLA-Tencor stock, Bond was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Bond violated Cal. Corp. Code §§25402 and 25502.5 by selling 5,000 KLA-Tencor shares for insider trading proceeds of $253,050 during the relevant period.

23. Defendant Edward W. Barnholt ("Barnholt") has been a director of the Company since 1995. During the relevant period, Barnholt actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 1995-FY 2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his Board membership and ownership of KLA-Tencor stock, Barnholt was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein. Based on his knowledge of material non-public information regarding the Company, defendant Barnholt violated Cal. Corp. Code §§25402 and 25502.5 by selling 29,000 KLA-Tencor shares for insider trading proceeds of $1.4 million during the relevant period.

24. Defendant Stephen P. Kaufman ("Kaufman") has been a director of the Company since November 2002. During the relevant period, Kaufman actively participated in the preparation, review and approval of KLA-Tencor's publicly reported financial results and financial statements for FY 2003-2005, as well as the corresponding reports on SEC Form 10-K and press releases. By reason of his Board membership and ownership of KLA-Tencor stock, Kaufman was a controlling person of KLA-Tencor and had the power and influence, and exercised the same, to cause KLA-Tencor to engage in the conduct detailed with particularity herein.

25. Defendant David C. Wang ("Wang") has been a director of the Company since May 2006.

26. The defendants identified in ¶¶14, 16 and 19-25 are referred to herein as the "Director Defendants." The defendants identified in ¶¶14-18 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶14-23 are referred to herein as the "Insider Selling Defendants."

## DEFENDANTS' DUTIES

27. Each officer and director of KLA-Tencor named herein owed the Company and KLA-Tencor shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of KLA-Tencor's directors and officers complained of herein

involves knowing, intentional and culpable violations of their obligations as officers and directors of KLA-Tencor. Further, the misconduct of KLA-Tencor's officers has been ratified by KLA-Tencor's Board, which has failed to take any legal action on behalf of the Company against them.

28. By reason of their positions as officers, directors and fiduciaries of KLA-Tencor and because of their ability to control the business and corporate affairs of the Company, the Defendants owed KLA-Tencor and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage KLA-Tencor in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of KLA-Tencor and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over KLA-Tencor to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

29. Because of their positions of control and authority as directors or officers of KLA-Tencor, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause KLA-Tencor to disseminate false Proxy Statements for fiscal 1995-2005, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock options grants in order to manipulate the strike price of the stock options they received. Because of their positions with KLA-Tencor, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to KLA-Tencor shareholders and the financial markets but failed to do so.

30. Between fiscal 1995 and 2005, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was ***not less than*** the fair market value of KLA-Tencor stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date. However, Defendants concealed until 2006 that the stock option grants were repeatedly and consciously ***backdated*** to ensure that the strike price

associated with the option grants was at or near the lowest trading price for that fiscal period. Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to Defendants between 1994 and 2002 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

31. To discharge their duties, the directors of KLA-Tencor were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of KLA-Tencor. By virtue of such duties, the officers and directors of KLA-Tencor were required, among other things, to:

(a) manage, conduct, supervise and direct the business affairs of KLA-Tencor in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of KLA-Tencor);

(b) neither engage in self-dealing nor knowingly permit any officer, director or employee of KLA-Tencor to engage in self-dealing;

(c) neither violate nor knowingly permit any officer, director or employee of KLA-Tencor to violate applicable laws, rules and regulations;

(d) remain informed as to the status of KLA-Tencor's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

(e) prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f) establish and maintain systematic and accurate records and reports of the business and affairs of KLA-Tencor and procedures for the reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(g) maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that KLA-Tencor's financial statements – including its expenses, accounting for stock option grants and other financial information – would be accurate and the actions of its directors would be in accordance with all applicable laws;

(h) exercise control and supervision over the public statements to the securities markets and trading in KLA-Tencor stock by the officers and employees of KLA-Tencor; and

(i) supervise the preparation and filing of any financial reports or other information required by law from KLA-Tencor and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of KLA-Tencor and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

32. Each Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of KLA-Tencor, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Defendants who were also officers and/or directors of the Company during the relevant period has been ratified by the Director Defendants who comprised KLA-Tencor's entire Board during the relevant period.

33. Defendants breached their duties of loyalty and good faith by allowing or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. In addition,

as a result of Defendants' illegal actions and course of conduct during the relevant period, the Company is now the subject of an SEC investigation. As a result, KLA-Tencor has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a) improvidently paid executive compensation;

(b) increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation in the investment community;

(c) professional costs associated with the SEC's inquiry and the U.S. Attorney's investigation;

(d) costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(e) incurring possible IRS penalties for improperly reporting compensation.

34. These actions have irreparably damaged KLA-Tencor's corporate image and goodwill. For at least the foreseeable future, KLA-Tencor will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that KLA-Tencor's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## AIDING AND ABETTING AND CONCERTED ACTION

35. In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

36. At relevant times, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was over-paying its directors, officers and employees and improperly misrepresenting its financial results, in order to allow Defendants to artificially inflate the price of the Company's shares; (ii) maintain Defendants' executive and directorial positions at KLA-Tencor and the profits, power and prestige which

Defendants enjoyed as a result of these positions; (iii) deceive the investing public, including shareholders of KLA-Tencor, regarding Defendants' management of KLA-Tencor's operations, the Company's financial health and stability, and future business prospects, which had been misrepresented by Defendants throughout the relevant period; and (iv) allow several of the Company's officers and directors to sell millions of dollars worth of Company stock at inflated prices. In furtherance of this course of conduct, Defendants collectively and individually took the actions set forth herein.

37. Defendants engaged in a common course of conduct commencing by at least 1994 and continuing thereafter. During this time, Defendants caused the Company to conceal the true fact that KLA-Tencor was over-compensating its directors, officers and employees and misrepresenting its financial results. In addition, Defendants also made other specific, false statements about KLA-Tencor's financial performance and future business prospects, as alleged herein.

38. The purpose and effect of Defendants' common enterprise and/or common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition, and future business prospects; and to artificially inflate the price of KLA-Tencor common stock so they could: (i) dispose of millions of dollars of their own stock, and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

39. Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently grant under-priced stock options and to misrepresent its financial results. Because the actions described herein occurred under the authority of the Board of Directors, each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

40. Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary

wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

41. KLA-Tencor is a supplier of process control and yield management solutions for the semiconductor and related microelectronics industries. The Company's portfolio of products, software, analysis, services and expertise is designed to help integrated circuit manufacturers manage yield throughout the entire fabrication process, from research and development to final mass-production yield analysis. The Company provides inline wafer defect monitoring; reticule and photomask defect inspection; critical dimension metrology; wafer overlay; film and surface measurement; and overall yield and fab-wide data analysis.

42. By law, Defendants owed KLA-Tencor a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. To adequately carry out these duties, it is necessary for Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems KLA-Tencor faced because of its deficient internal controls. Furthermore, defendants Bingham, Bond and Kaufman, as members of the Audit Committee of KLA-Tencor's Board, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to Defendants as KLA-Tencor's directors and officers. Moreover, Defendants had ample opportunity to discuss this material information with management and fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or conscious inactions, the misleading statements to be disseminated by KLA-Tencor to the Company's shareholders.

43. Specifically, the reported dates KLA-Tencor stock-options were granted differed from the dates on which the options were actually granted. The practice applied to stock option grants made between 1994 and 2002, which allowed directors, officers and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to pocket larger profits.

44. An option can give the holder the right to buy stock at a certain price in the future. Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the strike price – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote. By manipulating the grant dates, KLA-Tencor was able to provide executives and employees with the lowest possible exercise price. The lower the exercise price, the worse off KLA-Tencor was because it would receive less cash for the option purchased. However, such manipulation would allow the director, officer or other employee to increase the amount he or she would pocket by a commensurate amount. So, as insiders, Defendants were motivated to "cherry pick" the dates on which the prices would be set. Certain of KLA-Tencor's grants are described below (adjusted for stock splits):

**1998 Option Grants**

45. Defendants dated many of KLA-Tencor's 1998 option grants as of August 31, 1998, at $10.625 per share – ***not only the low for the month but also for the year***. The stock traded between $10.625 and $16.1563 per share during August 1998. The stock traded between $10.625 and $24.00 per share during 1998. Defendants Levy and Schroeder each received 204,272 options at $10.625 per share.

**1999 Option Grants**

46. Defendants dated KLA-Tencor's 1999 option grants as of October 27, 1999, at $33.75 per share – nearly the lowest price at which the stock traded that month, when the stock traded between $33.125 and $39.5938 per share. Defendants Levy and Schroeder received 90,000 and 150,000 options, respectively, at this price.

**2000 Option Grants**

47. Defendants dated KLA-Tencor's 2000 option grants on several dates including one of which was the lowest price for the year. Defendants Levy and Schroeder received 37,901 and 75,800 options, respectively, at $44.69 per share on August 11, 2000, nearly the lowest price at which the stock traded that month, when the stock traded between $42.375 and $65.625 per share. Defendants Levy and Schroeder received 18,951 and 37,900 options, respectively, at $26.25 per share on November 10, 2000 – ***not only the low for the month but also the low for the year***. The stock traded as high as $33.50 during the month and as high as $97.4375 during the year.

**2001 Option Grants**

48. Defendants dated KLA-Tencor's 2001 option grants on several dates including two which were at the lowest price of the month in which the options were granted. Defendants Levy and Schroeder received 18,951 and 37,900 options, respectively, at $32.75 per share on April 4, 2001 – the low of the month. The stock traded as high as $54.96 per share in April 2001. Defendants Levy, Schroeder and Kispert received 28,425, 341,100 and 60,000 options, respectively, at $29.31 per share dated October 2, 2001 – again the low for the month. The stock traded as high as $45.25 per share in October 2001.

**2002 Option Grants**

49. Defendants dated KLA-Tencor's 2002 option grants as of November 8, 2002, at $37.05 per share – nearly the lowest price at which the stock traded that month, when the stock traded between $34.97 and $45.80 per share. Defendants Schroeder, Kispert and Wallace received 31,450, 12,500 and 12,500 options, respectively, at this price.

50. Below are several of KLA-Tencor's grants which occurred right before significant stock price increases:


KLA-Tencor
July 31, 1998 - September 30, 1998
Dollars Per Share
17
16
15
14
13
12
11
10
8/31/98
07/31/1998
08/05/1998
08/10/1998
08/13/1998
08/18/1998
08/21/1998
08/26/1998
08/31/1998
09/03/1998
09/09/1998
09/14/1998
09/17/1998
09/22/1998
09/25/1998
09/30/1998


KLA-Tencor
September 27, 1999 - November 29, 1999
Dollars Per Share
50
45
40
35
30
10/27/99
09/27/1999
10/06/1999
10/15/1999
10/26/1999
11/04/1999
11/15/1999
11/24/1999


KLA-Tencor
July 11, 2000 - September 11, 2000
Dollars Per Share
8/11/00
70
65
60
55
50
45
40
07/11/2000
07/18/2000
07/25/2000
08/01/2000
08/08/2000
08/15/2000
08/22/2000
08/29/2000
09/05/2000


KLA-Tencor
October 10, 2000 - December 11, 2000
Dollars Per Share
11/10/00
38
36
34
32
30
28
26
24
10/10/2000
10/19/2000
10/30/2000
11/08/2000
11/17/2000
11/29/2000
12/08/2000


KLA-Tencor
March 2, 2001 - May 4, 2001
Dollars Per Share
60
55
50
45
40
35
30
4/4/01
03/02/2001
03/12/2001
03/20/2001
03/28/2001
04/05/2001
04/16/2001
04/24/2001
05/02/2001


KLA-Tencor
August 31, 2001 - November 2, 2001
Dollars Per Share
55
50
45
40
35
30
25
10/2/01
08/31/2001
09/07/2001
09/19/2001
09/25/2001
10/01/2001
10/05/2001
10/11/2001
10/17/2001
10/23/2001
10/29/2001
11/02/2001




51. Since FY 1995, Defendants caused KLA-Tencor to report false and misleading financial results which materially understated its compensation expenses and thus overstated its earnings as follows:

| Fiscal Year | Reported Earnings (in millions) | Reported Diluted EPS |
|---|---|---|
| 1995 | $105 | $1.34 |
| 1996 | $197 | $1.17 |
| 1997 | $105 | $0.62 |
| 1998 | $134 | $0.76 |
| 1999 | $39 | $0.22 |
| 2000 | $253 | $1.32 |
| 2001 | $67 | $0.34 |
| 2002 | $216 | $1.10 |
| 2003 | $137 | $0.70 |
| 2004 | $244 | $1.21 |
| 2005 | $467 | $2.32 |
| 1Q-3Q 2006 | $251 | $1.23 |

52. In effect, between 1994 and 2006, Defendants caused KLA-Tencor shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial results. These financial results misrepresented and omitted to disclose that

the Company had problems with its internal controls that prevented it from issuing accurate financial reports and that because of improperly recorded stock-based compensation expenses the Company's publicly reported financial statements and results presented an inflated view of KLA-Tencor's earnings and EPS.

53. Notwithstanding their direct participation in and knowledge of the misconduct particularized above, and their possession of material, adverse non-public information about KLA-Tencor, Defendants sold more than 4.8 million shares of KLA-Tencor stock between January 1, 1996 and May 1, 2006, for proceeds of more than $246 million:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| BARNHOLT | 12/10/04 – 11/18/05 | 29,000 | $1,432,675 |
| BINGHAM | 11/22/05 | 5,000 | $263,100 |
| BOND | 09/13/05 | 5,000 | $253,050 |
| HALL | 12/03/04 – 11/18/05 | 12,300 | $607,060 |
| KISPERT | 01/18/00 – 09/15/05 | 341,500 | $20,156,845 |
| LEVY | 04/30/96 – 02/27/06 | 2,285,651 | $111,476,225 |
| SCHROEDER | 05/08/97 – 02/08/06 | 1,249,800 | $64,336,289 |
| TOMPKINS | 07/31/97 – 08/29/05 | 670,049 | $31,565,583 |
| URBANEK | 12/14/01 – 02/27/06 | 9,149 | $448,324 |
| WALLACE | 08/05/99 – 12/03/03 | 292,499 | $15,547,430 |
| **TOTAL** | | **4,899,948** | **$246,086,581** |

54. On May 22, 2006, *The Wall Street Journal* reported that the Company has shown questionable patterns surrounding the timing of option grants to their executives. Later the same day, it was disclosed that U.S. federal prosecutors were investigating executive stock option grants at KLA-Tencor.

55. In the wake of these disclosures, KLA-Tencor's stock closed down $4.70 per share on extremely high volume to close at $40.54 on May 22, 2006 – a one day decline of 10.4%. KLA-Tencor's stock price continues to trade at depressed levels.

56. Additionally, as a result of the sharp decline in KLA-Tencor's stock price due to its involvement in the ongoing option granting scandal, KLA-Tencor has been forced to renegotiate its deal to acquire ADE Corporation. Initially, on February 23, 2006, KLA-Tencor announced that it had entered into an agreement with ADE Corporation to acquire ADE in a stock-for-stock transaction valued at approximately $488 million. Under the agreement, KLA-Tencor would issue

0.64 share of KLA-Tencor per 1 share of ADE. This calculation was based upon the closing price of KLA-Tencor stock for February 22, 2006 of $51.73. Due to the recent sharp decline in the value of KLA-Tencor's stock, KLA-Tencor was forced to change the terms of its agreement with ADE into an all-cash transaction instead of a stock-for-stock transaction. On May 26, 2006, KLA-Tencor announced that it had amended its agreement with ADE from a stock-for-stock transaction to an all-cash transaction and that it had agreed to pay $32.50 in cash per share of ADE stock in a transaction valued at approximately $478 million. KLA-Tencor's stock closed at $40.62 per share on May 26, 2006 – a 21.5% decline from February 22, 2006.

57. Then, on May 30, 2006, KLA-Tencor announced that the SEC had opened an informal inquiry into the Company's past stock option grants.

58. Worse yet, the members of KLA-Tencor's Board of Directors refuses to take any remedial actions against their fellow board members and business allies responsible for the improper reporting of the Company's stock-based compensation since FY 1995, although many of these same Defendants pocketed $246 million in unlawful insider trading proceeds by bailing out of their own KLA-Tencor stock while it traded at prices artificially inflated by Defendants' false statements about KLA-Tencor's financial results.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

59. Plaintiff incorporates ¶¶1-57.

60. Plaintiff brings this action derivatively in the right and for the benefit of KLA-Tencor to redress injuries suffered and to be suffered by KLA-Tencor as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

61. Plaintiff will adequately and fairly represent the interests of KLA-Tencor and its shareholders in enforcing and prosecuting its rights.

62. Plaintiff is an owner of KLA-Tencor stock and was an owner of KLA-Tencor stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

63. Based upon the facts set forth throughout this Complaint, a pre-filing demand upon the KLA-Tencor Board of Directors to institute this action against the officers and members of the KLA-Tencor Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act because:

(a) The members of KLA-Tencor's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b) The KLA-Tencor Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from KLA-Tencor's stockholders or recklessly and/or consciously negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees, and directors, and attendance at Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Pursuant to their specific duties as Board members, Defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to KLA-Tencor in that they failed to prevent and correct the improper stock option granting and financial reporting. Certain directors are also dominated and controlled by other Defendants and cannot act independently of them. Thus, the KLA-Tencor Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did.

(c) The acts complained of constitute violations of the fiduciary duties owed by KLA-Tencor's officers and directors and these acts are incapable of ratification.

(d) The members of KLA-Tencor's Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action.

(e) Any suit by the current directors of KLA-Tencor to remedy these wrongs would likely further expose the liability of Defendants under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of the Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination on whether to sue themselves.

(f) KLA-Tencor has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet KLA-Tencor's Board has not filed any lawsuits against Defendants or others who were responsible for that wrongful conduct to attempt to recover for KLA-Tencor any part of the damages KLA-Tencor suffered and will suffer thereby.

(g) In order to properly prosecute this lawsuit, KLA-Tencor's directors would have to sue themselves and the other Defendants, requiring them to expose themselves and their comrades to millions of dollars in civil liability and/or sanctions, while an investigation by the U.S. Attorney's office is still underway. This they will not do.

(h) KLA-Tencor's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance which they caused the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of KLA-Tencor. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions which eliminate coverage for any action brought directly by KLA-Tencor against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of KLA-Tencor, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as

this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

(i) To bring this action for breaching their fiduciary duties, the members of the KLA-Tencor Board would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do.

64. Plaintiff has not made any demand on shareholders of KLA-Tencor to institute this action since such demand would be a futile and useless act for the following reasons:

(a) KLA-Tencor is a publicly traded company with approximately 199 million shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON KLA-TENCOR'S FINANCIAL STATEMENTS

**The FY 1995 Form 10-K**

65. On or about September 27, 1995, the Company filed its FY 1995 Form 10-K with the SEC. The FY 1995 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1995 Form 10-K included KLA-Tencor's FY 1995 financial statement which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The FY 1996 Form 10-K**

66. On or about September 27, 1996, the Company filed its FY 1996 Form 10-K with the SEC. The FY 1996 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1996 Form 10-K included KLA-Tencor's FY 1996 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the

backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The FY 1997 Form 10-K**

67. On or about September 29, 1997, the Company filed its FY 1997 Form 10-K with the SEC. The FY 1997 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1997 Form 10-K included KLA-Tencor's FY 1997 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The FY 1998 Form 10-K**

68. On or about September 28, 1998, the Company filed its FY 1998 Form 10-K with the SEC. The FY 1998 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1998 Form 10-K included KLA-Tencor's FY 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The FY 1999 Form 10-K**

69. On or about September 28, 1999, the Company filed its FY 1999 Form 10-K with the SEC. The FY 1999 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1999 Form 10-K included KLA-Tencor's FY 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The FY 2000 Form 10-K**

70. On or about September 28, 2000, the Company filed its FY 2000 Form 10-K with the SEC. The FY 2000 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2000 Form 10-K included KLA-Tencor's FY 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the

backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The 2001 Form 10-K**

71. On or about September 21, 2001, the Company filed its FY 2001 Form 10-K with the SEC. The FY 2001 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2001 Form 10-K included KLA-Tencor's FY 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The 2002 Form 10-K**

72. On or about September 20, 2002, the Company filed its FY 2002 Form 10-K with the SEC. The FY 2002 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2002 Form 10-K included KLA-Tencor's FY 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The 2003 Form 10-K**

73. On or about September 16, 2003, the Company filed its FY 2003 Form 10-K with the SEC. The FY 2003 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2003 Form 10-K included KLA-Tencor's FY 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The 2004 Form 10-K**

74. On or about August 30, 2004, the Company filed its FY 2004 Form 10-K with the SEC. The FY 2004 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2004 Form 10-K included KLA-Tencor's FY 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the

backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

**The 2005 Form 10-K**

75. On or about September 2, 2005, the Company filed its FY 2005 Form 10-K with the SEC. The FY 2005 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2005 Form 10-K included KLA-Tencor's FY 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, KLA-Tencor's compensation expense was understated and its net earnings were overstated.

76. The materially false and misleading FY 1995-2005 Form 10-Ks described above were reviewed, prepared and/or endorsed by the Director Defendants. The FY 1995-1997 and FY 1999-2005 Form 10-Ks were signed by defendant Levy as the Chairman of the Board of KLA-Tencor. Levy also signed the FY 1995-1996 and the FY 1998 Form 10-Ks as CEO. The FY 1999-2005 Form 10-Ks were signed by defendant Schroeder as CEO. Schroeder further signed the FY 1995-1998 Form 10-Ks as a director and as the Company's President and COO. The FY 1999-2005 Form 10-Ks were signed by defendant Kispert as CFO. The FY 1995-1998 Form 10-Ks were signed by former CFO Robert J. Beohlke and the FY 1997 Form 10-K was signed by former CEO Tompkins.

## DEFENDANTS' SCHEME BEGINS TO UNRAVEL

77. The FY 1995-2005 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between 1994 and 2005. In fact, it was not until *The Wall Street Journal* article that shareholders learned that the Proxy Statements which they had relied upon for nearly a decade were false and misleading. Defendants have been unjustly enriched at the expense of KLA-Tencor, which has received and will receive less money from the Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated. Each dollar diverted to Defendants via the option backdating scheme has come at the expense of the Company.

78. On May 22, 2006, KLA-Tencor's stock dropped as it was mentioned in *The Wall Street Journal* article on companies at risk for being involved in the backdating scandal. Later on May 22, 2006, reports surfaced on an investigation into KLA-Tencor's executive stock option grants by the U.S. federal prosecutors.

79. Additionally, as a result of the sharp decline in KLA-Tencor's stock due to its involvement in the ongoing option granting scandal, KLA-Tencor has been forced to renegotiate its deal to acquire ADE. Initially, on February 23, 2006, KLA-Tencor announced that it had entered into an agreement with ADE to acquire ADE in a stock-for-stock transaction valued at approximately $488 million. Under the agreement, KLA-Tencor would issue 0.64 share of KLA-Tencor per 1 share of ADE. This calculation was based upon the closing price of KLA-Tencor stock for February 22, 2006 of $51.73. Due to the recent sharp decline the value of KLA-Tencor's stock, KLA-Tencor was forced to change the terms of its agreement with ADE into an all-cash transaction instead of a stock-for-stock transaction. On May 26, 2006, KLA-Tencor announced that it had amended its agreement with ADE from a stock-for-stock transaction to an all-cash transaction and that it had agreed to pay $32.50 in cash per share of ADE stock in a transaction valued at approximately $478 million. KLA-Tencor's stock closed at $40.62 per share on May 26, 2006 – a 21.5% decline from February 22, 2006.

80. Then, on May 30, 2005, KLA-Tencor announced that the SEC had opened an informal inquiry into the Company's past stock option grants.

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

81. Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions. Given the many times KLA-Tencor's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

82. As a result of the backdating of options, Defendants have been unjustly enriched at the expense of KLA-Tencor, which has received and will receive less money from Defendants when

they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

83. The Counts alleged herein are timely. As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring KLA-Tencor's public investors that KLA-Tencor's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

84. KLA-Tencor's public investors had no reason to know of the Defendants' breach of their fiduciary duties until May 2006, when *The Wall Street Journal* published its article detailing the option practices of KLA-Tencor and other companies.

85. Finally, as fiduciaries of KLA-Tencor and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from KLA-Tencor's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the KLA-Tencor Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §10(b) and Rule 10b-5 of the Exchange Act Against All Defendants

86. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87. Throughout the relevant period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct designed to divert hundreds of millions of dollars to Defendants via improper option grants.

88. Defendants employed devices, schemes and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about KLA-Tencor not misleading.

89. Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as officers of the Company, each of the Defendants was able to and did control the conduct complained of herein and the content of the public statements disseminated by KLA-Tencor.

90. Defendants acted with scienter throughout the relevant period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. Defendants were among the senior management of the Company, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports and filings with the SEC.

91. Each of the Defendants participated in a scheme to defraud with the purpose and effect of defrauding KLA-Tencor.

92. By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violations of §14(a) of the Exchange Act Against All Defendants

93. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94. Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

95. The fiscal 1995-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing that KLA-Tencor to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1994.

96. In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

97. The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

98. The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT III

### Violations of §20(a) of the Exchange Act Against Defendants Levy, Schroeder, Wallace, Kispert, Hall, Tompkins, Urbanek, Bingham, Bond, Barnholt, Kaufman and Wang

99. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

100. Plaintiff brings this claim against defendants Levy, Schroeder, Wallace, Kispert, Hall, Tompkins, Urbanek, Bingham, Bond, Barnholt, Kaufman and Wang.

101. The defendants named in this Count, by virtue of their positions with KLA-Tencor and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of KLA-

Tencor within the meaning of §20(a) of the Exchange Act. They had the power and influence and exercised the same to cause KLA-Tencor to engage in the illegal conduct and practices complained of herein.

**COUNT IV**

**Accounting**

102. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

103. At all relevant times, Defendants, as directors and/or officers of KLA-Tencor, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

104. In breach of their fiduciary duties owed to KLA-Tencor and its shareholders, the Defendants caused KLA-Tencor, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of KLA-Tencor. By this wrongdoing, the Defendants breached their fiduciary duties owed to KLA-Tencor and its shareholders.

105. The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

106. As a result of Defendants' misconduct, KLA-Tencor has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

107. Plaintiff demands an accounting be made of all stock options grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other exercise of backdated stock option grants received by the Defendants.

**COUNT V**

**Breach of Fiduciary Duty and/or Aiding and Abetting Against All Defendants**

108. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

109. Each of the Defendants agreed to and did participate with Levy, Schroeder, Wallace and Kispert and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties the Defendants owed to the Company.

110. The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to KLA-Tencor and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of KLA-Tencor and its shareholders.

111. As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to KLA-Tencor and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

112. By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward KLA-Tencor and its public shareholders.

113. As a proximate result of Defendants' conduct, in concert with Levy, Schroeder, Wallace and Kispert, KLA-Tencor has been injured and is entitled to damages.

**COUNT VI**

**Abuse of Control Against All Defendants**

114. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

115. The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, KLA-Tencor, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at KLA-Tencor. As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding KLA-Tencor.

116. Defendants' conduct constituted an abuse of their ability to control and influence KLA-Tencor.

117. By reason of the foregoing, KLA-Tencor has been damaged.

**COUNT VII**

**Gross Mismanagement Against All Defendants**

118. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

119. Defendants had a duty to KLA-Tencor and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of KLA-Tencor.

120. Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of KLA-Tencor in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of KLA-Tencor's affairs and in the use and preservation of KLA-Tencor's assets.

121. During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused KLA-Tencor to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to KLA-Tencor, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged KLA-Tencor.

122. By reason of the foregoing, KLA-Tencor has been damaged.

**COUNT VIII**

**Constructive Fraud Against All Defendants**

123. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

124. As corporate fiduciaries, Defendants owed to KLA-Tencor and its shareholders a duty of candor and full accurate disclosure regarding the true state of KLA-Tencor's business and assets and their conduct with regard thereto.

125. As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from KLA-Tencor's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of KLA-Tencor. Thus they have committed constructive fraud and violated their duty of candor.

126. By reason of the foregoing, KLA-Tencor has been damaged.

## COUNT IX

### Corporate Waste Against All Defendants

127. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

128. By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused KLA-Tencor to waste valuable corporate assets.

129. As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT X

### Unjust Enrichment Against All Defendants

130. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

131. As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of KLA-Tencor, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

132. Certain Defendants also obtained severance benefits that were not earned or justified but were instead paid as part of a scheme to cover up Defendants' complicity in the scheme.

133. All the payments and benefits provided to the Defendants were at the expense of KLA-Tencor. The Company received no benefit from these payments. KLA-Tencor was damaged by such payments.

134. Certain of the Defendants sold KLA-Tencor stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of KLA-Tencor. A constructive trust for the benefit of the Company should be imposed thereon.

**COUNT XI**

**Against the Officer Defendants for Rescission**

135. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

136. As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and KLA-Tencor entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by KLA-Tencor shareholders and filed with the SEC.

137. All contracts which provide for stock option grants between the Officer Defendants and KLA-Tencor and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

**COUNT XII**

**Against the Insider Selling Defendants for Violation of California Corporations Code §25402**

138. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

139. At the time that the Insider Selling Defendants sold their KLA-Tencor common stock as set forth herein at ¶53, by reason of their high executive and/or directorial positions with KLA-

Tencor, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of KLA-Tencor's improper accounting.

140. At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of KLA-Tencor shares at that time.

141. The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their KLA-Tencor common stock in California in violation of California Corporations Code §25402.

142. Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to KLA-Tencor for damages in an amount up to three times the difference between the price at which KLA-Tencor common stock was sold by these Defendants, and each of them, and the market value which KLA-Tencor common stock would have had at the time of the sale if the information known to these Defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XIII

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

143. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

144. At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold KLA-Tencor common stock on the basis of such information.

145. The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold KLA-Tencor common stock.

146. At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of KLA-Tencor common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

147. Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A. Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B. Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C. Directing KLA-Tencor to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance Policies:

(i) a proposal requiring that the office of CEO of KLA-Tencor and Chairman of the KLA-Tencor Board of Directors be permanently held by separate individuals and that the Chairman of the KLA-Tencor Board meets rigorous "independent" standards;

(ii) a proposal to strengthen the KLA-Tencor Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii) appropriately test and then strengthen the internal audit and control functions;

(iv) rotate independent auditing firms every five years;

(v) control and limit insider stock selling and the terms and timing of stock option grants; and

(vi) reform executive compensation.

D. Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

E. Awarding punitive damages;

F. Awarding costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: June 27, 2006

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
TRAVIS E. DOWNS III

DARREN J. ROBBINS

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Derivative\Cpt KLA-Tencor Derv.doc

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

ATTORNEY OF RECORD FOR PLAINTIFF
ALASKA ELECTRICAL PENSION FUND

VERIFICATION

I, DARREN J. ROBBINS, hereby declare as follows:

1. I am a member of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2. I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 27th day of June, 2006 at San Diego, California.

DARREN J. ROBBINS